IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>BILLY DWIGHT SMITH, JR., )<br>)<br>Defendant. ) | Case No. CR-06-224-D<br>(Case No. CIV-09-531-D) |

**O R D E R**

The matter before the Court is Defendant Billy Dwight Smith, Jr.'s *pro se* Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence [Doc. No. 92]. Defendant raises a claim that his conviction and sentence were caused by ineffective assistance of trial counsel and a claim that he is actually innocent of the offense of conviction, a violation of 18 U.S.C. § 1623(a). The government has responded in opposition to the Motion. In its response, the government conceded that the existing record was insufficient to evaluate Defendant's allegation that his counsel provided ineffective assistance by failing to object to a sentencing enhancement under U.S.S.G. § 2J1.3(b)(2). Upon consideration, the Court determined that an evidentiary hearing was necessary on this issue and appointed counsel for Defendant. *See* Order Granting Evidentiary Hearing [Doc. No. 99]. Defendant, through appointed counsel, subsequently filed a reply brief addressing the issue on which an evidentiary hearing was granted.

Defendant appeared in person for the evidentiary hearing on September 8, 2010, with his attorney, William H. McCampbell. The government appeared through Assistant United States Attorneys Timothy Ogilvie and David Walling. At the hearing, the Court heard testimony of the following witnesses: Karen Hess, the case agent; Cassandra Williams, a former assistant district attorney for Oklahoma County, Oklahoma; Jack Dempsey Pointer, Defendant's trial counsel; and

Defendant. The Court received a stipulation of expected testimony that Jack McCurdy, Defendant's attorney for § 2255 proceedings in Case No. CR-00-49-T, would testify as set forth in his affidavit. *See* Def.'s Reply Br. [Doc. 102], Ex. 1. The Court also admitted one exhibit, Defendant's Exhibit 1, which is a copy of a Writ of Habeas Corpus Ad Testificandum, issued by the District Court of Oklahoma County, Oklahoma, in Case No. CF-1982-5681 on November 18, 2005.

After careful consideration of the parties' submissions, the existing record, and the additional evidence presented, the Court denies relief for the reasons set forth below.

**A.     Factual Background**

Defendant was previously convicted in Case No. CR-00-49-T of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant received an enhanced prison sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Defendant's conviction and sentence were affirmed on appeal, and the Supreme Court denied a petition for a writ of certiorari. On October 9, 2003, Defendant timely filed a § 2255 motion for relief from his sentence in Case No. CR-00-49-T. Defendant, who appeared *pro se*, claimed that he received ineffective assistance of counsel because his appointed counsel failed to investigate the validity of a prior burglary conviction in the District Court of Oklahoma County, Oklahoma, Case No. CRF-1982-5681, on which the government relied for the ACCA enhancement. Defendant alleged that the burglary conviction had been expunged in 1989 and he submitted a certified copy of an expungement order from the Oklahoma County court clerk's office. The government responded by asserting that the expungement order was not genuine and requesting an evidentiary hearing. The assigned district judge, the Honorable Ralph G. Thompson, ordered the appointment of counsel to represent Defendant for an evidentiary hearing. The appointed attorney, Mr. McCurdy, entered his appearance on March 11, 2004, and withdrew the § 2255 motion on March 25, 2004.

2

In this case, Defendant was indicted by a grand jury on September 21, 2006, and charged with knowingly using a false document in a court proceeding – the expungement order with his § 2255 motion in Case No. CR-00-49-T – in violation of 18 U.S.C. § 1623(a). Mr. Pointer was appointed for Defendant at his arraignment on October 16, 2006, and a jury trial was set for December 4, 2006. On October 31, 2006, Mr. Pointer requested additional time to file pretrial motions based on the voluminous discovery provided by the government, including almost 1400 pages of written materials and 85 telephone recordings made during Defendant's incarceration by the Bureau of Prisons. Defendant subsequently waived his rights under the Speedy Trial Act, 18 U.S.C. § 3161, and requested a trial continuance and a second extension of time to file motions, due to both the complexity of discovery and the need for further investigation.

Defendant, through counsel, timely filed a motion to suppress evidence that the government had obtained through the execution of a search warrant for a residence on February 26, 2004. Judge Thompson, who was the assigned trial judge in this case, conducted an evidentiary hearing and denied the motion for numerous reasons. Judge Thompson found that Defendant lacked standing to challenge the search because he "had no expectation of privacy in the garage apartment or the personal papers kept there" and thus he "failed to show the challenged search infringed his Fourth Amendment Rights." *See* Order of 1/29/07 [Doc. No. 31] at 5. Alternatively, Judge Thompson found no Fourth Amendment violation in "that the search warrant adequately described the property to be searched and that the search fell within the authorized bounds of the warrant." *See id.* at 6. Further, Judge Thompson found that Kelli Burns, a resident who was present at the time of the search, voluntarily consented and authorized the full extent of the search. Finally, Judge Thompson found that the evidence would be admissible in any event under the good faith exception of *United*

*States v. Leon*, 468 U.S. 897 (1984), because any error by agents executing the search warrant was reasonable. *See* Order of 1/29/07 [Doc. No. 31] at 6.

The case proceeded with pretrial matters and a jury trial before Judge Thompson. Defendant, through Mr. Pointer, filed multiple motions *in limine* and objections to the government's proposed evidence. These motions were largely denied. A telephone recording in which Defendant used the words "armed career criminal" was deemed admissible, but government was prohibited from using the phrase in regard to Defendant or his prior sentence. *See* Order 4/6/07 [Doc. No. 51] at 6. After a two-day trial, the jury convicted Defendant of the charged offense on April 10, 2007.

In a handwritten note filed in the case record on April 24, 2007, Defendant requested the appointment of new counsel based on a belief that Mr. Pointer had not provided effective assistance. Defendant stated he had informed Mr. Pointer of potential witnesses to the search but Mr. Pointer had failed to investigate or utilize them at the suppression hearing. Defendant further stated that Mr. Pointer "is now claiming he never heard of these witnesses," even though several people (Wayne Carruthers, Ms. Burns, and the neighbors themselves) had contacted Mr. Pointer about them. *See* Motion to Appoint Counsel [Doc. No. 61]. Defendant also complained that Mr. Pointer had failed to inform Defendant that Ms. Burns (referred to as Defendant's wife) wished to testify at the trial. Mr. Pointer allegedly had refused to speak with her or to call her as a witness for the defense. After a hearing, Judge Thompson found Defendant had "failed to show a basis for substitution of counsel" and denied his request. *See* Order 7/5/07 [Doc. 64]. After sentencing, however, Mr. Pointer was allowed to withdraw, and the court of appeals appointed substitute counsel.

On appeal, Defendant challenged the denial of his suppression motion, evidentiary rulings, the jury instructions, and the sentencing enhancement cited in his § 2255 Motion. The court of

appeals found "no error in the district court's denial of Defendant's motion to suppress." *See Smith*, 531 F.3d at 1266. The challenged evidentiary rulings related to recorded conversations between Defendant and Ms. Burns in which Defendant used the phrase "armed career criminal" and stated he would need to hire counsel. The court of appeals concluded that the trial court did not abuse its discretion in admitting the recording with the "armed career criminal" reference. *See id.* at 1267. The court found that Defendant had waived review of the reference to hiring counsel because Mr. Pointer relied on the recording for his own purposes and utilized this evidence as part of the defense. *See id.* at 1268. The court of appeals found no error in the jury instructions. As to the sentence, the court concluded that certain factual findings supported a three-level enhancement under § 2J1.3(b)(2) of the Sentencing Guidelines, as discussed further below, but declined to review a new objection raised on appeal because the record was inadequate to evaluate it. *See id.* at 1270-71. The Tenth Circuit therefore affirmed Defendant's conviction and sentence.

In the instant § 2255 Motion, Defendant claims that his trial counsel, Mr. Pointer, provided ineffective assistance in that: (A) he failed to investigate defense evidence, namely, witnesses regarding the execution of the search warrant; (B) he denied Defendant an opportunity to review the telephone recordings and did not effectively challenge them; (C) he admitted in his opening statement the falsity of the document, which was an essential element of the offense; (D) he failed to object to a jury instruction regarding the "reasonable doubt" burden of proof; (E) he failed to object to improper comments by the prosecutor referring to Defendant's exercise of a right to counsel; and (F) he failed to investigate and make a potentially meritorious objection to the sentencing enhancement under § 2J1.3(b)(2) of the Sentencing Guidelines. Defendant also claims "actual innocence" of the charged offense, arguing that the evidence was insufficient to establish that he knowingly used a false document.

5

**B.     Hearing Evidence**

The focus of the § 2255 evidentiary hearing was the unreviewed objection to the sentencing enhancement, which Mr. Pointer allegedly neglected to raise. Agent Karen Hess testified that she first examined the state court case file concerning Defendant's burglary conviction at issue (No. CF-1982-5681) for purposes of an ACCA sentencing enhancement in Case No. CR-00-49-T. She went to the county court clerk's office to view the case file again in 2004. Agent Hess testified that, in 2004, she was informed the file had been secured and was being treated as sealed; the court clerk permitted her to examine it only within a designated area of the clerk's office. Agent Hess was assisted by an expert document examiner, David Parrett, who concluded the copy of an expungement order was not genuine by comparing it to other documents in the file. Agent Hess testified her 2004 review revealed there was no expungement order in the burglary case file and none was reflected on the docket sheet. Agent Hess thus concluded that a manufactured document had been placed in the case file at some point and the court clerk had been asked to copy it and certify the copy; it was then submitted with Defendant's § 2255 motion. However, the false document was not in the file when Agent Hess viewed it in 2004.

Ms. Williams testified that she was an assistant district attorney for Oklahoma County from 1988 until 2007. She caused papers to be filed and a hearing to be set in 2005 to gain access to, and ultimately correct, Defendant's criminal case file with regard to a document that purported to be an expungement order filed in the case record. Ms. Williams stated that she believed the expungement order was a sham document as defined by Section 1533 of Title 21 of the Oklahoma Statutes, but the document was found in the corresponding case file and was purportedly signed by the presiding judge. Ms. Williams testified that she filed a motion to unseal the case record, which she believed was appropriate under the expungement statutes. Ms. Williams stated that she had been allowed by

6

the court clerk's office to examine the file, but she understood the court clerk was treating the file as sealed because of the expungement order.

Ms. Williams further testified that the assigned district judge, the Honorable Twyla Mason Gray, set a hearing date for November 30, 2005, and directed Ms. Williams to have Defendant present. Ms. Williams stated that she obtained a writ of habeas corpus ad testificandum in order to bring Defendant to Oklahoma City for the hearing, but the hearing was considered an administrative proceeding rather than a criminal proceeding in the case, for which Defendant had already discharged the sentence. Judge Gray conducted the November 30 hearing and examined Defendant concerning the document. Ms. Williams presented evidence to show the purported expungement order was a sham; her intended purpose was to convince Judge Gray the document was not authentic and to gain access to the case file. Ms. Williams testified the court clerk was treating the document as authentic and the chief deputy court clerk, Mr. Merritt, had informed her that the document could not be removed from the file, and the file could not be unsealed, without a court order. At the conclusion of the hearing, Ms. Williams asked Judge Gray to release the file for further examination and forensic testing; the request was orally granted as reflected in the transcript.

Ms. Williams also testified that the duties of the civil division of the district attorney's office included representing the court clerk's office, and that the court clerk had no statutory authority to determine the genuineness of a document. Ms. Williams stated her belief that the State of Oklahoma had an interest in maintaining accurate court records and that the accuracy of records of prior convictions is important for law enforcement purposes. A certified copy attests that it is identical to an original document filed in the case record, and the copy would be accepted as genuine. Ms. Williams testified that the motion to unseal the burglary case file was not made for any prosecutorial purpose and no state criminal charge was brought against Defendant in connection

with the false document. Ms. Williams stated that as a result of her effort, the court record was corrected and the case file is now open to the public.

Mr. Pointer testified he has been a licensed attorney since 1970 and was appointed as trial counsel for Defendant in this case (No. CR-06-224-D). Mr. Pointer stated that he interviewed Defendant, reviewed discovery materials, investigated leads supplied by Defendant or his girlfriend, and discussed with Defendant the presentence report and objections. Regarding the enhancement, Mr. Pointer testified that he examined the state court file, the docket sheet, and a transcript of the November, 2005 state court hearing, and he objected based on the fact that the hearing was held without counsel for Defendant and Defendant's presence at the hearing was "pointless." He did not object to the enhancement on the ground that the state court hearing was unnecessary or investigatory, and did not consider whether the state had expended any resources; his stated objection was that federal authorities had not expended any resources in bringing Defendant to Oklahoma for the state court hearing. On cross-examination, Mr. Pointer agreed that a motion to unseal the record was necessary to gain access to the file and that the state had an interest in maintaining correct records for many reasons, some of which are unrelated to criminal matters (such as voting, employment, child custody, and licensing). He also conceded that a certified copy of an instrument is accepted as an original for many purposes.

Mr. Pointer further testified that he investigated potential witnesses whom Defendant believed would say that Ms. Burns was not home at the time of the search. Mr. Pointer stated that one person could not be reached and the other person could not support Defendant's case. In Mr. Pointer's view, the issue of Ms. Burns' presence was unimportant because the search warrant authorized the search without her consent. Mr. Pointer testified that he listened to the telephone recordings. He stated that he made a strategic decision at trial, with no objection from Defendant,

8

to acknowledge the falsity of the document due to the strength of the government's case on that issue. Mr. Pointer instead elected to focus on the defense that Defendant had no knowledge of the document or its falsification.

Defendant testified that he has been an inmate at FCI-Memphis for ten years. Defendant stated his belief that Mr. Pointer did not adequately investigate the sentencing enhancement. Defendant testified that he received no notice from the state court about the purpose of the November, 2005 hearing and no request that he consent to the removal of a sham document from the case file without the necessity of his appearance for the hearing. Defendant first learned of the writ from prison officials and, during the trip from Memphis to Oklahoma City, learned that he was a witness. Defendant stated he was first informed that the hearing was about a document after he arrived in Oklahoma County, and if asked, he would not have objected to the removal of the document from the case file.

Defendant acknowledged that he utilized the document to file a § 2255 motion in Case No. CR-00-49-T, and that counsel was appointed for that proceeding, investigated the document, and advised him to withdraw the motion. Defendant also acknowledged that the state paid for two sheriff's deputies to make two full-day round trips to Memphis to bring Defendant to Oklahoma City for the hearing and then return him to prison, and that he stayed in the Oklahoma County jail for several days. Defendant's position regarding the sentencing enhancement is that all expenditures were related to the federal perjury investigation, which allegedly began with his filing the § 2255 motion in Case No. 00-49-T. Defendant testified he has no proof Mr. Pointer failed to investigate potential witnesses regarding the search warrant and does not know what the witnesses would have said. Defendant also complains that Mr. Pointer did not allow him to review the telephone

9

recordings, but he stated the only indication that Mr. Pointer did not listen to the telephone recordings is that Mr. Pointer was unable to refute them.

**C.     Ineffective Assistance of Counsel**

   **1.     Standard of Decision**

> Ineffective assistance of counsel claims are . . . guided by the now familiar *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this test, a petitioner must show that "his trial counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir.1993) (*quoting Strickland*, 466 U.S. at 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*United States v. Mora*, 293 F.3d 1213, 1217 (10th Cir. 2002); *see also Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Young v. Sirmons*, 486 F.3d 655, 674-75 (10th Cir. 2007). A court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *See Fields v. Gibson*, 277 F.3d 1203, 1216 (10th Cir. 2002) (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)); *see also United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000). As the person claiming ineffective assistance of trial counsel, Defendant bears the burden to prove his claim by a preponderance of the evidence. *See Young*, 486 F.3d at 674-75; *Sallahdin v. Mullin*, 380 F.3d 1242, 1248 (10th Cir. 2004).

The Supreme Court explained in *Strickland* the "highly deferential" degree of scrutiny to be applied to an attorney's strategic decisions:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689. Regarding an attorney's decisions as to the scope or nature of an investigation, the Court in *Strickland* further stated:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

### 2. Counsel's Pretrial Investigation and Trial Preparation

From the record and the evidence presented in this case, the Court finds there has been no showing by Defendant that Mr. Pointer failed to make a reasonable investigation of the charge in the Indictment and possible defenses thereto. The evidence and record are clear that Mr. Pointer was knowledgeable about the discovery materials, potential witnesses, the government's evidence, the legal issues, and the factual issues to be tried to the jury. The Court finds to be fully credible Mr. Pointer's testimony concerning his investigation of lines of defense, particularly the motion to suppress, and his review of the telephone recordings. The Court further finds no basis to conclude that any additional investigation would have affected Judge Thompson's suppression ruling or the court of appeals' affirmance of that ruling, nor that permitting Defendant to review the telephone recordings would have materially impacted the defense. In short, Defendant has failed to substantiate his claim that Mr. Pointer provided ineffective assistance with regard to pretrial proceedings and trial preparation.

### 3. Counsel's Trial Performance

Notwithstanding Defendant's complaints about Mr. Pointer's trial performance, the record is clear that these complaints primarily concern matters of trial strategy about which Mr. Pointer exercised reasonable professional judgment. As anticipated by Mr. Pointer's opening statement, the

11

government presented overwhelming evidence of the falsity of the document. Further, the court of appeals found no error in the jury instructions. *See Smith*, 531 F.3d at 1269. Similarly, Mr. Pointer reasonably elected not to object to the prosecutor's comments concerning Defendant's statement in a recorded conversation about a need for counsel but, instead, utilized the evidence for defense purposes after Judge Thompson's pretrial ruling that the evidence was admissible. On appeal, the court of appeals expressly found that the record "contains nothing from which we would conclude that defense counsel's decision to rely on the disputed evidence for his own purposes fell outside the wide range of reasonable professional assistance." *See id.* at 1268. Because Defendant has presented no further facts bearing on this issue, the court of appeals' finding remains true today. Accordingly, the Court finds Defendant has failed to substantiate his claim that Mr. Pointer provided ineffective assistance with regard to the jury trial.

### 4. Counsel's Investigation of and Objection to the Sentencing Enhancement

The sentencing proceedings occurred after this case had been reassigned to the undersigned judge. In calculating a sentence under the Sentencing Guidelines, the Court applied a three-level increase of the base offense level under § 2J1.3(b)(2), which authorizes the enhancement "[i]f the perjury . . . resulted in substantial interference with the administration of justice." As pertinent to this case, the application notes define "substantial interference with the administration of justice" to include "the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.3 n.1. The Court overruled Defendant's objection to the enhancement, as stated by Mr. Pointer, and the court of appeals upheld this ruling, as follows:

> The district court imposed this enhancement based on the final portion of the commentary definition, finding that Defendant's conduct caused the unnecessary expenditure of substantial governmental or court resources in view of the hearing held by the state to determine whether the file from Defendant's allegedly expunged 1982 conviction should be reopened. The district court found that Defendant's

> presence was required at the hearing and that the state incurred expenses transporting him there, that the hearing caused an expenditure of resources on the part of the district attorney and state court, and that an expert's services were used to evaluate the authenticity of the record.
>
> On appeal, as before the district court, Defendant argues that this enhancement does not apply because the government did not prove that any expenditures by the government or court were "substantial" and because the state court did not need to hold this hearing due to the legal impossibility of Defendant's 1982 burglary case being expunged in the first place. We reject both of these contentions. The district court heard testimony at the sentencing hearing from the assistant district attorney who had represented the county court clerk's office in the state hearing. She testified that the court clerk's office cannot unseal a file without a court order. She also testified that the state court judge required Defendant's presence at the state hearing because it would have been inappropriate to decide whether the file should be unsealed in an ex parte hearing. Although she testified that she did not know the exact amount expended, she testified that the hearing required the expenditure of time and resources from the state judge and district attorney's office and that the state expended money paying for at least two deputies to transport Defendant from Memphis to Oklahoma City for the hearing. Although this evidence of expenditures may have been limited, "[i]n light of the deference that we afford the district court regarding these factual determinations, we cannot say that its conclusion that [Defendant's] perjury resulted in the substantial expenditure of resources is clearly erroneous." *United States v. Sinclair*, 109 F.3d 1527, 1540 (10th Cir. 1997).

*Smith*, 531 F.3d at 1270-71.

The court of appeals declined to review an additional objection asserted by Defendant's appellate counsel due to the inadequacy of the factual record. This objection, as explained by the court of appeals and argued in Defendant's current briefs regarding his § 2255 Motion, is that the state's expenditure of resources in connection with the state court hearing in November, 2005, should not count because that proceeding was part of the underlying perjury investigation. *See Sinclair*, 109 F.3d at 1540 ("expenses associated with the underlying perjury offense should not form the basis of an upward adjustment"); *see also Smith*, 531 F.3d at 1271 (quoting *Sinclair*). Defendant points to Ms. Williams' motion to unseal the burglary case file in No. CF-1982-5681, which states as follows: "The State of Oklahoma and the United States of America are currently

13

conducting an investigation of what appears to be a created document entitled 'Order Expunging Conviction' . . . ." *See* Def.'s Motion [Doc. No. 92], attach. at 17.

In a reply brief filed through counsel, Defendant also alleges that the burglary case file was not truly sealed and no motion to unseal or correct it was needed. He relies on Mr. McCurdy's affidavit stating that the case file was publicly available during his representation of Defendant in March, 2004, in connection with the § 2255 motion in Case No. CR-00-49-T. Defendant also relies on the transcript of the November, 2005 hearing and the writ of habeas corpus ad testificandum to argue that the hearing was a mere pretense to investigate the origin of the false document and "to get this Defendant in a compromising position and hope to extract a confession, in advance of the Federal investigation." *See* Def.'s Reply Br. [Doc. No. 102] at 14.[1] Defendant notes that Agent Hess was assisted by Mr. Parrett, who was identified in her report as an investigator for the Oklahoma County District Attorney's Office, and that her report states she and Mr. Parrett were able to review documents in the file in February, 2004, without a court order. Concerning Mr. Pointer's performance, Defendant points to the failure to advocate this objection to the § 2J1.3(b)(2) enhancement and the failure to question Ms. Williams fully at the sentencing hearing about the necessity and circumstances of the November, 2005, state court hearing.

Upon consideration of Defendant's arguments in light of the evidence admitted at the evidentiary hearing, the Court finds that Defendant has failed to substantiate his allegations that the state court hearing was a sham and that its sole purpose was to further a perjury investigation. As framed by the court of appeals, the "relevant question" is "whether the state hearing was motivated simply by the federal investigators' request to have the records unsealed to assist their perjury

---

[1] The reply brief also purports to quote from a cover letter from Ms. Williams to the warden of FCI-Memphis that accompanied the writ, but no such document appears in the case record.

investigation or whether it was motivated at least in part by an interest outside of the perjury investigation, such as the state's desire to clear its records." *Smith*, 531 F.3d at 1271. This Court finds the current record to be clear that the November, 2005 state court hearing was motivated, at least in part, by a desire of the State of Oklahoma to correct the burglary case file, to have it properly classified as a file open for public viewing, and to maintain the accuracy of judicial records.

The Court acknowledges that some evidence suggests an investigatory purpose behind the hearing, such as Ms. Williams' testimony that a reason for unsealing the burglary case file was to permit forensic testing. However, the undisputed testimony of Ms. Williams and Agent Hess, which the Court finds to be fully credible, establishes that the Oklahoma County Court Clerk determined at some point that the case file should be treated as sealed in light of the expungement order and that a judicial resolution of the document's authenticity was necessary to determine the proper status of the file. It is further undisputed that Ms. Williams filed the motion she deemed appropriate in light of the court clerk's determinations and that Judge Gray required a hearing on the motion and required Defendant to attend. Despite the questions posed by Judge Gray at the hearing, there is no evidence to substantiate Defendant's allegation that the hearing was an effort by the state "to beat the Federal Government to the 'prosecutorial punch'" and to extract a confession from Defendant that he fabricated the expungement order. *See* Def.'s Reply Br. [Doc. No. 102] at 18-19. Instead, the Court finds the evidence clearly establishes that the state court hearing, and the substantial judicial and financial resources devoted to it, were primarily intended to ensure the accuracy of a judicial record that the Oklahoma County Court Clerk was bound to maintain.

Accordingly, the Court finds the additional objection and evidence that Mr. Pointer failed to present at the sentencing hearing would not have affected the outcome of that proceeding. The Court's finding would remain unchanged that the government established by a preponderance of the

evidence that the three-level enhancement under § 2J1.3(b)(2) was appropriate because Defendant's offense resulted in substantial expenditure of governmental and judicial resources for reasons unrelated to the perjury investigation. Therefore, Defendant has failed to establish that Mr. Pointer provided ineffective assistance with regard to his sentence.

D.      **Actual Innocence**

Defendant's claim that he is actually innocent of the offense of conviction is misguided. It is based solely on a contention that the evidence adduced at trial was insufficient to support the jury's guilty verdict.[2] A claim of actual innocence is not a freestanding claim but an avenue for judicial consideration of a claim of constitutional error that has been procedurally defaulted. *See*, *e.g.*, *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Cervini*, 379 F.3d 987, 991 (10th Cir. 2004). More importantly, "'[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Cervini*, 379 F.3d at 991-92 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). In this case, Defendant does not allege the existence of any such evidence, nor suggest that it would be sufficient to meet the demanding "actual innocence" standard, which requires that the new evidence be "powerful enough to convince a court that no reasonable juror would have voted to convict." *Id*. at 992. Therefore, the Court finds that Defendant has failed to allege a cognizable claim for relief from his conviction based on his actual innocence of the offense.

E.      **Conclusion**

---

[2] In the reply brief filed by counsel, Defendant makes additional contentions that would appear to connect this claim to a defaulted claim regarding pre-indictment delay. *See* Def.'s Reply Br. [Doc. No. 102] at 21-22. The Court disregards these new contentions as an untimely effort to amend Defendant's § 2255 Motion to add a new claim after the expiration of the one-year time limit of § 2255(f). Further, this claim would fail due to the same deficiencies as the *pro se* claim asserted by Defendant in his original papers.

For these reasons, the Court finds that Defendant's asserted grounds for relief from his conviction and sentence lack merit.

IT IS THEREFORE ORDERED that Defendant's Motion Under 28 U.S. C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. No. 92] is DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 26th day of January, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE